UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WILLIAM J. BARNETT,<br>      Plaintiff, | )<br>)<br>) |
| v. | )   CAUSE NO.: 3:20-CV-413-JVB-JPK |
| KILOLO KIJAKAZI,<br>Commissioner of Social Security<br>Administration,<br>      Defendant. | )<br>)<br>)<br>)<br>)<br>) |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1] and Plaintiff's Brief in Support of Complaint [DE 21]. Defendant filed a response, and Plaintiff did not file a reply.

On July 21, 2020, District Court Judge Joseph S. Van Bokkelen entered an Order [DE 9] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant briefing pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court reverse the decision of the Social Security Administration and remand for further proceedings.

**PROCEDURAL BACKGROUND**

On March 20, 2018, Plaintiff protectively filed an application for supplemental security income and, on March 27, 2018, Plaintiff filed an application for disability insurance benefits, alleging disability beginning May 30, 2015. The claims were denied initially and on reconsideration. Plaintiff requested a hearing, which was held before an Administrative Law Judge

(ALJ) on November 18, 2019. On January 29, 2020, the ALJ issued an unfavorable decision, making the following findings:[1]

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.
>
> 2. The claimant has not engaged in substantial gainful activity since May 30, 2015, the alleged onset date.
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the lumbar, thoracic, and cervical spine; degenerative joint disease of the right shoulder; and depression.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the [ALJ found] that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry twenty pounds occasionally and ten pounds frequently. The claimant is limited to occasional overhead reaching and frequent reaching in front and laterally with the bilateral upper extremities. The claimant can sit for six hours and stand and/or walk for six hours for a total of eight hours in a workday, with normal breaks. The claimant can occasionally climb stairs and ramps, but cannot climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, and crouch, but never crawl. The claimant is limited to being able to understand, remember and carry out work that consists of no more than simple and routine tasks. The claimant is limited to a work environment free of fast paced or timed piece rate production work, but can meet end of day goals. The claimant is limited to routine judgment defined as being able to make simple work-related decisions. The claimant is limited to simple workplace changes. The claimant is limited to no more than occasional brief and superficial interaction with the public, defined as no more involved interaction than answering discrete questions such as the location of an item in a store. The claimant is limited to no more than occasional interaction with coworkers and no tandem tasks or teamwork where one production step is dependent on a prior step.
>
> 6. The claimant is unable to perform any past relevant work.

---

[1] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

    7.     The claimant was born [in 1973] and was 42 years old, which is defined as a younger individual age 45-49 [sic], on the alleged disability onset date.

    8.     The claimant has at least a high school education and is able to communicate in English.

    9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

    10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

    11.    The claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2015, through the date of this decision.

(AR 21-32[2]).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the Agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might

---

[2] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

3

accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability; (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe; (3) whether the claimant's impairment

or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations; (4) if the claimant does not meet a listing, whether he is unable to perform his past relevant work; and (5) if the claimant is unable to perform past relevant work, whether he is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff asserts two grounds for reversal of the ALJ's decision: (1) the ALJ erred in arriving at the RFC determination; and (2) the ALJ's step five determination is unsupported. (Pl.'s Br. 8-23, ECF No. 21).

### A. Residual Functional Capacity

Plaintiff argues that the ALJ failed to construct a logical bridge in arriving at the RFC determination. (Pl.'s Br. 8-19, ECF No. 21). Specifically, Plaintiff contends that: (1) the ALJ erred in assessing Plaintiff's subjective symptom allegations; (2) the ALJ erred in considering multiple medical opinions; and (3) the ALJ erred in her consideration of the statements offered by Plaintiff's sister. *Id.*

5

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

*1. Subjective Symptom Allegations*

Plaintiff asserts that the ALJ failed to properly consider Plaintiff's allegations regarding his subjective symptoms. (Pl.'s Br. 8-16, ECF No. 21).

An ALJ follows a two-step process to evaluate a claimant's subjective complaints. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* at §§ 404.1529(a), (b), 416.929(a), (b). Second, once the existence of such a medically determinable impairment is established, the ALJ evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they impose work-related functional limitations. *Id.* at §§ 404.1529(a), (c), 416.929(a), (c). Social Security Ruling 16-3p explicitly requires the ALJ to "consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and . . . evaluate whether the statements are consistent with objective medical evidence and the other evidence." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017). Moreover, an ALJ may not "cherry-pick evidence from the record to support their conclusions, without engaging with the evidence that weighs against their findings." *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018).

Regarding Plaintiff's physical limitations, the ALJ noted Plaintiff's testimony that he has pain in his back and shoulders, that he cannot lift like he used to, that he cannot stand or walk for long periods of time and uses a cane, and that he has muscle spasms and lacks grip strength. (AR 26). The ALJ further noted Plaintiff's reports of unsteady gait, decreased sensation, stiff neck, and bladder control issues. (AR 26 (citing AR 831-42)).

In finding these allegations not entirely consistent with the medical evidence, the ALJ recounted numerous records indicating only mild issues with Plaintiff's spine. (AR 26 (citing AR

333, 450, 500-01, 636, 641-42, 645-46, 724, 749, 817)). The ALJ recounted additional records indicating that Plaintiff failed to follow up on certain treatments, such as radiofrequency ablation and physical therapy. (AR 27 (citing AR 620, 659, 754-66)). The ALJ noted that Plaintiff's reported shoulder problem was "extremely poorly documented." (AR 27 (citing AR 528-60, 700, 726, 822-24)). Additionally, the ALJ noted records indicating that Plaintiff "did not appear to be in acute distress." (AR 27 (citing AR 370, 432, 469, 489, 540, 543, 546, 549, 556, 565, 575, 578, 581, 639, 649, 653, 658, 696, 707, 717, 727, 744, 748, 752, 800, 817, 833)). Finally, the ALJ recounted records indicating that Plaintiff has full muscle strength, no focal deficits, and intact sensation on examination. (AR 28 (citing AR 387, 414, 565, 575-76, 581-82, 639, 649-50, 658-59, 718, 744-45, 748-49, 837)).

While the Court appreciates the efforts undertaken by the ALJ to cite records in support of her determination, it nonetheless appears that the ALJ neglected to consider numerous records that supported Plaintiff's subjective allegations regarding his physical limitations. Moreover, the ALJ's characterization of certain records appears to be inaccurate. For example, while the ALJ cited records noting that Plaintiff was not in "acute distress" as inconsistent with his subjective symptoms, many of those records actually support his allegations. (*See* AR 469, 543 (musculoskeletal exam revealed decreased range of movement and positive tenderness); AR 549 (musculoskeletal exam revealed decreased range of movement); AR 556, 578, 653, 727, 817 (noting Plaintiff uses a cane); AR 565 (noting Plaintiff was tender to palpitation of the lumbar paraspinal muscles and experiencing paraspinal muscle spasms in the lumbar spine); AR 581 (noting Plaintiff's spine extension and rotation were limited with lumbar pain, that range of movement was abnormal, and that Plaintiff was tender to palpation of the lumber paraspinal muscles); AR 658 (noting that Plaintiff was tender to palpitation of the lumbar paraspinal muscles

8

and that his range of movement was abnormal); AR 717 (noting that pain was elicited by motion of the shoulder, that the cervical spine showed abnormalities, and that cervical spine pain was elicited by motion); AR 744, 748 (noting right upper extremity pain, left upper extremity pain, and parascapular pain bilaterally)). It appears that the ALJ "cherry-picked" from these medical records – highlighting the aspect of the records that weighed against disability, while ignoring the parts of those same records that supported a finding of disability. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("An ALJ may not selectively consider medical reports . . . [i]t is not enough for the ALJ to address mere portions of a doctor's report."). Moreover, it is not clear what symptoms the ALJ found inconsistent with the reports of no "acute distress," and it is unclear to the Court why a person not in acute distress could not also have difficulty standing, walking, or lifting. When the ALJ's evidence does not support the propositions for which it is cited, she has not built the required logical bridge between the evidence and her conclusion. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

The ALJ's analysis of Plaintiff's alleged need for a cane suffered from the same flaws. The ALJ summarized evidence indicating, essentially, that Plaintiff was sometimes seen with an abnormal gait and sometimes with a normal one. (AR 27-28 (citing AR 357-58, 414, 537, 559, 578, 581, 658, 833)). The ALJ further stated that "the claimant's children reportedly doubt his pain and his daughter even took his cane once and told [him] he did [not] need it." (AR 28 (citing AR 756)).

The ALJ's description of the incident with Plaintiff's children was particularly subject to a competing conclusion. The report comes from a mental diagnostic evaluation, in which the evaluator recorded:

> Client reports very little involvement with his family. . . . Client reports 'my wife
> and extended family have tried to turn my children against me', and that when he

9

does behave like a father, his children will make fun of his pain and 'call me a liar – my daughter even took my cane once and told me I don't need it. My kids don't understand what it's like to be in pain.'

(AR 756). It is not the Court's role to determine whether or how this record supports or weighs against disability. But the ALJ's analysis ignored the evidence suggesting that the daughter's report was motivated by animus, rather than a genuine observation about Plaintiff's need for a cane. Once again, the aspect of the report suggesting no disability was cherry-picked, and the surrounding context, which could have supported disability, or at least not cut against a finding of disability, was ignored.

More broadly, the ALJ seemed to conclude, without explanation, that Plaintiff did not need a cane because he was sometimes observed to have a normal gait, and therefore he "could sit for six hours and stand and/or walk for six hours for a total of eight hours in a workday." (AR 25, 27-28). But walking normally for a short period of time does not necessarily mean that a person does not need a cane, or that he can walk for six hours in a day. *See Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013) (report that a claimant used a cane for "support and confidence" and "could walk greater than 50 feet without support" was not substantial evidence that she could walk or stand for six hours of an eight-hour work day); *Scott*, 647 F.3d at 740 ("Scott successfully walked 50 feet without a cane within the confines of her office, but that brief excursion hardly demonstrates an ability to stand for 6 hours.").

As for his alleged mental limitations, Plaintiff argues that the ALJ improperly relied upon a lack of treatment as a basis for finding that Plaintiff's allegations were inconsistent with the evidence. (Pl.'s Br. 14-15, ECF No. 21). Per SSR 16-3p, an ALJ is instructed not to "find an individual's symptoms inconsistent with the evidence in the record [based on a failure to follow prescribed treatment that might improve symptoms] without considering possible reasons he or

she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." 2017 WL 5180304, at *9 (noting that some factors to consider are an inability to afford treatment and the side effects of medication); *see also Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (noting that, while "infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment," an ALJ must nonetheless "'not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care").

The Court agrees that the ALJ failed to properly consider the reasons behind Plaintiff's lack of robust mental health treatment in finding his subjective allegations inconsistent with the medical evidence. The ALJ cited medical records indicating that Plaintiff is depressed, paranoid, and anxious, but then noted that his "treatment has been very sparse." (AR 28 (citing AR 754-66)). The ALJ further noted that Plaintiff has not received mental health treatment as of his alleged onset date, and that Plaintiff seemed to be "very inconsistent in attending therapy and other services." (AR 28 (citing AR 829)).

While the ALJ acknowledged that Plaintiff lives about seventy miles from his mental health treatment facility, the ALJ stated that Plaintiff "declined an offer to move to a closer location."[3] (AR 28). Finally, the ALJ noted records describing Plaintiff as "minimally engaged in treatment and showing poor progress as evidenced by inconsistent or declining rating on objectives." (AR 28 (citing AR 828-29)). But the ALJ did not address the potential explanation in those same

---

[3] On this point, the ALJ cited to a record indicating that "Client declined offer to move to MCO only in the past." (AR 829). It is unclear to the Court whether "MCO" refers to another location, a different type of treatment, or something else. In any case, the ALJ failed to "explore" the reasons for this refusal, as she was required to do. *Craft*, 539 F.3d at 679.

records: "Inconsistent treatment attendance, no transportation"; "client cancelled session . . . due to no available transportation." (AR 828-29).

The ALJ failed to acknowledge records and testimony indicating that Plaintiff was homeless at times, reliant on others to provide transportation to his appointments, had a "hard time trusting doctors," was "paranoid about treatment he has gotten in the past," at one point believed that "doctors and the insurance companies [were] messing with him," and did not want to attend treatment in his town of residence because "his wife and family 'know all the doctors and [he did not] want them telling [his] family [he is] getting therapy, or getting bad treatment because they think they know about [him].'" (AR 77, 81-82, 296, 761, 782, 788). Nor did the ALJ note a record indicating that Plaintiff's previous experience with counseling services was negative. (AR 759 (explaining Plaintiff's report that he attended counseling services for a month in 2003 but stopped "because it was doing more damage to [him] than it was helping")). It was improper for the ALJ to perfunctorily list Plaintiff's ostensible failures to comply with a stringent mental health treatment regimen as inconsistent with his subjective allegations without addressing the myriad evidence in the record indicating why that might be so. This was error. *See Craft*, 539 F.3d at 679. Accordingly, the Court recommends remand for proper consideration of Plaintiff's allegations

regarding his subjective symptoms, noting that any conclusions regarding those symptoms must be supported by substantial evidence in the record.

*2. Physician Opinions*

Plaintiff argues that the ALJ failed to give appropriate weight to certain medical opinions. (Pl.'s Br. 16-19, ECF No. 21). Although Plaintiff objects to the ALJ's consideration of three different medical opinions, the Court's analysis focuses on the opinion of Dr. John Bulger.

An ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion. *See* 20 C.F.R. §§ 404.1520c; 416.920c. For claims filed on or after March 27, 2017, such as Plaintiff's claim, the ALJ need not defer or give any specific evidentiary weight to any medical opinions. *Id.* Medical opinions are weighed by considering the following factors: (1) Supportability used by the medical source to support his opinion; (2) Consistency of the medical opinion with the other evidence in the record; (3) Relationship with the claimant, including the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship; (4) Specialization of the medical source; and (5) Other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The regulations state that supportability and consistency are the most important factors to consider, and that the other three factors only require discussion if it is appropriate for the determination. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Regulations provide that when an ALJ is looking at the supportability and consistency of a medical opinion, these terms mean:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

13

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The ALJ noted that she considered the opinion of Dr. Bulger, Plaintiff's primary care physician, but she did not specify whether she assigned it a particular weight. (AR 29). While the ALJ acknowledged that Dr. Bulger was a treating physician who had been seeing Plaintiff since June 2017, she nonetheless found that Dr. Bulger's opinion was "not consistent with or supported by the record, or even his own treatment notes." (AR 29). As support for this assertion, the ALJ noted that Dr. Bulger described Plaintiff as "unable to stand or sit upright for six to eight hours and indicated that [Plaintiff] would need to lie [down] during the day, but only described this limitation as being due to 'pain.'" (AR 29). The ALJ explained that such limitations were not supported by Plaintiff's records, including those from Dr. Bulger himself, which "overwhelmingly indicate that [Plaintiff] is not in acute distress." (AR 29 (citing AR 370, 432, 469, 489, 540, 543, 546, 549, 556, 565, 575, 578, 581, 639, 649, 653, 658, 696, 707, 717, 727, 744, 748, 752, 800, 817, 833)).

There are two issues with this finding. First, several of the records cited by the ALJ pertained to emergency situations unrelated to the focus of Dr. Bulger's treatment and Plaintiff's alleged disabling limitations. (*See* AR 370, 800 (medical records for emergency room visits due to spider bite); AR 817 (medical record for emergency room visit due to accidental fall)). Second, and more critically, while the ALJ was correct that many of the cited records note that Plaintiff did not appear to be in "acute distress," the ALJ did not mention that these records also contained numerous statements that support Dr. Bulger's more limiting findings. (*See* AR 469, 543 (musculoskeletal exam revealed decreased range of movement and positive tenderness); AR 549

14

(musculoskeletal exam revealed decreased range of movement); AR 556, 578, 653, 727, 817 (noting Plaintiff uses a cane); AR 565 (noting Plaintiff was tender to palpitation of the lumbar paraspinal muscles and experiencing paraspinal muscle spasms in the lumbar spine); AR 581 (noting Plaintiff's spine extension and rotation were limited with lumbar pain, that range of movement was abnormal, and that Plaintiff was tender to palpation of the lumber paraspinal muscles); AR 658 (noting that Plaintiff was tender to palpitation of the lumbar paraspinal muscles and that his range of movement was abnormal); AR 717 (noting that pain was elicited by motion of the shoulder, that the cervical spine showed abnormalities, and that cervical spine pain was elicited by motion); AR 744, 748 (noting right upper extremity pain, left upper extremity pain, and parascapular pain bilaterally)). That some of these records noted that Plaintiff did not appear to be in *acute* distress during an appointment did not contradict Dr. Bulger's findings about limitations caused by chronic pain and, therefore, did not present an adequate basis upon which the ALJ could disregard Dr. Bulger's opinion. The ALJ's failure to properly evaluate Dr. Bulger's opinion was error. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

Accordingly, the Court recommends remand for proper evaluation of Dr. Bulger's opinion, in accordance with the relevant regulations.

### B. Remaining Issues

Plaintiff also asserts that the ALJ did not properly analyze the opinions of Drs. Teresa Roberts and Teagan Rhoades, improperly rejected the statements of Plaintiff's sister, and did not properly support her analysis at step five regarding the jobs Plaintiff could do. Because the Court recommends remand on other grounds, the Court does not address these arguments. On remand,

15

the ALJ should consider these issues in light of the relevant regulations and case law, and incorporate all appropriate limitations into any hypotheticals posed to the Vocational Expert.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court **GRANT** the relief requested in Plaintiff's Brief in Support of Complaint [DE 21] and **REVERSE** the decision of the Commissioner of the Social Security Administration and remand for further proceedings.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 26th day of July, 2021.

                                        s/ Joshua P. Kolar
                                        MAGISTRATE JUDGE JOSHUA P. KOLAR
                                        UNITED STATES DISTRICT COURT